## HARVEY v. BENSON.

### No. 17418.

Court of Appeal of Louisiana. Orleans.

Oct. 21, 1940.

J. L. Warren Woodville, of New Orleans, for appellant.

McCloskey & Moore, of New Orleans (Jos. McCloskey, Jr., of New Orleans, of counsel), for appellee.

JANVIER, Judge.

This is a suit for a commission, interest and attorney's fees claimed to be due under a real estate brokerage contract for the sale of a piece of real estate formerly owned by defendant and sold by him.

Harvey, a licensed and qualified real estate agent, alleges that on February 23, 1939, he and the defendant, Benson, entered into a written contract, by the terms of which Benson appointed him as exclusive agent for the sale of two lots of ground in the City of New Orleans, and in which contract it was stipulated that, should Harvey secure a purchaser who would pay more than $1,300 for the lots, Benson would pay to Harvey $100 and "all over $1,300.00" which might be paid, and that, if the lots should be sold for less than $1,300, Harvey would be paid a commission of $100. In the contract no expiration date was stipulated, but it was provided that, should Benson desire to terminate the contract, he must give to Harvey 180 days' written notice. The property was sold by Benson directly to a third party on

October 19, 1939, for less than $1,300. The sale was made without the intervention or assistance of Harvey, who maintains that, by the terms of the contract, he is entitled to the commission of $100, together with legal interest, and also to an attorney's fee of 25 per cent. on the total amount.

Defendant concedes that the contract was executed and that the property was sold by him and that he has not paid any commission to Harvey, but he makes the special defense that, more than 180 days prior to the sale, he gave to Harvey the necessary written notice, which became effective before the sale was consummated.

In the court below there was judgment dismissing plaintiff's suit as of non-suit. He has appealed.

There is involved only a question of fact: Was the necessary notice of termination given 180 days or more before the sale was effected? If it was given, then Harvey has no claim since he did not procure the purchaser, and, if it was not given, then Harvey is entitled to the stipulated commission since the contract provided for its payment regardless of whether or not his services were the procuring cause of the sale.

 It is well settled that, where an owner who has made such a contract desires to make effective a notice of cancellation, the burden is on him to see that the notice reaches the other party to the contract. It is also well settled that proof that such notice was deposited in the United States mails creates a presumption that the notice was received by the real estate agent, which presumption will be sufficient to effect the termination of the contract in the absence of satisfactory proof that the said notice was not received. McWilliams v. Reith, 149 La. 298, 88 So. 913; Harvey v. Kuhnholz, 3 La.App. 794.

Here we find the testimony of Benson that, more than 180 days before the sale, he deposited in the mail box such a notice, properly addressed to Harvey. If the record contained no other evidence, the presumption resulting would be sufficient to warrant a holding that the contract had had a timely termination. But we find in the record the absolute denial of Harvey that he received the notice, and there are circumstances pointed out by him as corroborating his denial of receipt of such notice, and there are other facts, which, he contends, tend to throw doubt on the truthfulness of Benson's statement that such a letter was mailed.

As corroboration of the fact that he did not receive the letter, Harvey shows that, after the day on which the notice of cancellation would have become effective, he had advertised the property for sale, and he also shows that, after that day, he exhibited the property to eleven persons who had indicated interest therein. Surely, had he received such a notice, he would not have continued to spend money on advertising and to waste time and effort in an attempt to sell property which had been withdrawn from him. It is true that, on behalf of defendant, it is maintained that Harvey testified that it was his custom in such situations to continue to make efforts to sell the property after the termination of such a contract, but we think that this contention is based on what appears to us to be a plain clerical error in the record. He was asked by his attorney: " * * * Do you continue to advertise in those cases and try to sell the property after the 180 days is up?" And his answer was: "I certainly do."

His counsel explains that he is quite certain that the question asked was: "Do you continue to advertise in those cases and try to sell the property *until* the 180 days is up?" And it seems most reasonable to presume that that was the question asked since, just before, he had answered affirmatively to almost an identical question, viz.: " * * * if you had received a letter or notification under this contract, that you would have still advertised and tried to sell the property for 180 days? Is that correct?"

It is almost inconceivable that he intended to say that, after the termination of such a contract, he continued his attempts to effect a sale. At any rate, there are other circumstances quite conclusive to the effect that he did not receive any such notice.

We then come to the question of whether or not such a notice was actually sent by Benson, and we conclude that all of the circumstances make it almost certain that no such notice was put into the mail by him.

In the first place, he states that he is not a stenographer and that he uses the typewriter only in a small way in connection with his electrical business, and yet the copy of the letter which he introduced in evidence is most carefully prepared, showing no typographical errors or misplaced letters of any kind, and it appears to us to be the work of a finished stenographer. The first letter of each of the three paragraphs of the letter-

is on exactly the same line and the margins on the two sides of the letter are exactly the same in width, and, all in all, as we have said, the letter impresses us as having been written by an experienced typewriter operator.

Benson states that he wrote the letter in his downtown office on Saturday, February 25, 1939, and yet the letter is dated from his residence on February 26, 1939, which was a Sunday. It is shown that on the Saturday on which he says he wrote the letter he had prepared a business report and had properly dated it February 25. He states that he attached the utmost importance to the notice since he and his wife had decided, only two days after making the contract for the sale of the property, to withdraw it, and that it was his purpose, in writing the letter, to terminate that contract as soon and as effectively as possible. Yet, when he discovered that he had given the wrong date to this important letter—if he did discover it—he made no effort to correct it, or to supplement it. Furthermore, though he and his wife considered it of such importance that they both testified that they deposited the copy in their strong box at home, they not only did not send it by registered mail, but made no effort to ascertain whether it had been received, or to secure acknowledgement. In fact, he admits that shortly after the date of the letter he was approached by Mr. Harvey, who desired to prevail upon him to reduce the price of the property and that he refused to so reduce it, but strangely enough, he admits that at that conference he made no mention whatever of the fact that he had written such a letter.

But, most conclusive of all is the fact that, when he first testified that he had deposited the letter in a mail box, he was not certain about what box he had put it into, but was quite positive that it was a box either on the corner of Royal and Bienville Streets, or of Royal and Iberville Streets. After the case had been submitted below, but before a decision had been rendered, it was discovered that there was no mail box on either of these corners. The case was reopened and, at the second trial, Benson not only became very positive that he had put the letter in a mail box on the corner of *Bourbon* and Bienville Streets, but produced a witness for the purpose of corroborating this testimony. This witness states that, by chance, he was with Benson at the time and saw him deposit a letter in the mail box on that corner. It is highly improbable that he would have remembered such a thing since, at that time, he would not have attached to such an occurrence any significance at all.

All in all, we think the record shows beyond the shadow of a doubt that no such letter was written, and it follows that no proper notice was given to terminate the contract. The contract, therefore, was effective at the time Benson sold the property to the third person.

It provides for a commission of $100. Harvey is entitled to this and to legal interest from judicial demand. The contract also provides for an attorney's fee of 25 per cent. on the total amount.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of plaintiff, S. A. Harvey, and against Andrew Benson, defendant, in the sum of $100, with legal interest from judicial demand, and for attorney's fees at 25 per cent. on the total amount.

All costs to be paid by defendant.

Reversed.