172 So.2d 17 (1965)
Andrew BUSBEE, Jr., Appellant,
v.
Robert D. QUARRIER, Jr., Appellee.
No. F-542.
District Court of Appeal of Florida. First District.
February 11, 1965.
Rehearing Denied March 9, 1965.
*18 James E. Hertz, of Fisher & Hepner, Pensacola, for appellant.
Coe & Coe, Pensacola, for appellee.
STURGIS, Chief Judge.
This is an appeal from a final judgment for plaintiff entered pursuant to verdict of the jury assessing $25,000.00 damages in a negligence action arising out of the alleged unlawful death of plaintiff-appellee's minor son. The judgment is affirmed.
The defendant-appellant contends that the evidence is insufficient to support the verdict in that (1) there was no competent *19 evidence directly or inferentially establishing defendant's liability, and (2) that plaintiff's case depended on circumstantial evidence of such character that the jury could not have returned the verdict it did without pyramiding inference on inference, contrary to accepted principles of law; and that the trial court therefore erred in denying his motion for a directed verdict, made at the close of all the evidence, and/or in denying his post-judgment motion for new trial.
The first count of the complaint charged that plaintiff's son was mortally injured in consequence of defendant's negligent operation of his automobile while intoxicated. The second count charged that plaintiff's son met his death in consequence of the negligent operation of defendant's automobile by some unknown person to whom defendant had entrusted its use. It was incumbent on the plaintiff to affirmatively establish (a) that his son was killed by the negligence of the operator of defendant's car, and (b) that the car was operated by defendant or by someone for whose actions he was responsible. The challenged judgment reaches this court clothed with a presumption of correctness and appellant has the burden of clearly demonstrating reversible error. The facts in evidence and lawful inferences which may be drawn therefrom are to be construed in the light most favorable to the verdict of the jury and judgment entered thereon.
Plaintiff's minor son left his home on his bicycle about 5:00 a.m. to service his paper delivery route. About 25 or 30 minutes later he was found lying beside a public highway with his feet two feet off the highway and his head six feet off, and his bicycle was resting some 23 feet west and further on in the line he was apparently traveling when struck from the rear by defendant's automobile. An automobile radio aerial broken from its stand lay partly under and partly across his body. From dirt on the road it appeared that the point of impact was some nine feet in an easterly direction from where he lay. No automobile or other skid marks appeared. He was unconscious and suffering from wounds that in the course of the day proved mortal. Shortly after noon on the day of the accident the defendant phoned the local sheriff's office and advised that his new biege-colored Falcon panel ranch wagon had apparently been in an accident. An immediate investigation revealed that the aerial which lay with the body exactly fitted its broken base on that automobile and dents in the grill of the automobile exactly fitted the rear of a damaged luggage carrier of the bicycle.
Upon being first interrogated on the day of the accident as to where he was the previous night, defendant stated that he closed his business shortly after midnight and then went to his adjoining trailer home and slept there the rest of the night. At that time he volunteered that he would take care of the bills. When interrogated later that day at the sheriff's office concerning the use of his car, he made the statement, "I can tell you what you want to know"; but at that juncture his attorney arrived on the scene and he made no further statement. Sixteen months later at the trial he testified that he did not in fact go to bed shortly after midnight on the morning of the accident and explained that if he otherwise informed the investigator, it was because he misunderstood the night to which the investigator was referring when questioning him. He testified that he actually left his business after midnight, after drinking several beers, then went to Riverside Bar, a beer tavern. This tavern is located just west of the Escambia River bridge, which is some 10 or 12 miles east from defendant's home. A witness at that tavern testified that he stayed there until about 2:30 a.m. when that tavern closed. This witness said she saw him later that night at the Coral Club, another beer tavern. Defendant testified that while at the Riverside Bar he had a beer, bought a half-pint of whiskey, and then came home. He testified *20 that prior to going home on this occasion he had been driving his Falcon automobile (the one involved in the accident); that when he arrived home he changed his mind about staying there, parked his Falcon automobile at his home, took an old Buick automobile owned by him and drove to another night spot, known as the Coral Club, where he took one drink and left at 4:30 a.m., driving directly home; that on arriving at his home on this occasion he did not notice whether his new Falcon car remained parked where he left it on the opposite side of a tree under which he parked his Buick automobile; that he then went to bed and was wakened shortly after 10:00 a.m. by some workers who informed him that his Falcon car had suffered damage. He said he found it parked where he had presumably parked it the first time he returned home.
Several witnesses observed defendant at the night spots. Two of them testified that defendant was drunk. One testified that he met defendant on the road outside the second tavern visited by defendant; that at that time defendant was driving a light panel truck; that he suggested to defendant that defendant park this car, which he did; that the witness then took him into the tavern and that defendant departed therefrom with the crowd just before 5:00 a.m. when the band stopped playing and everybody had to go home. Another witness, who did not know the defendant, saw a biege Falcon panel truck, with one occupant, leave that tavern about that time.
Another witness, a taxicab night dispatcher, drove by the scene of the accident a few minutes after 5:00 a.m. and saw a paper boy on his bicycle and also saw a small light-colored compact automobile, answering the general description of defendant's Falcon, approaching at fast speed from around a curve some distance ahead and apparently finding difficulty in staying on the road. The identity of the Falcon automobile owned by defendant as the death-dealing instrumentality was established beyond reasonable doubt by the testimony of expert witness James Halligan, Supervisor in charge of the Crime Laboratory Section of the Florida Sheriffs Bureau.
We have detailed the foregoing facts favorable to the jury verdict in order to demonstrate that the verdict of the jury herein is consistent with the hereinafter discussed rules of evidence. As in the trial of any case depending on issues of fact, the evidence in this case is subject to various shades and nuances of interpretation, but under our system of jurisprudence it is the exclusive province of the jury to resolve the same.
There is ample evidence herein to support the jury's conclusion that the driver of defendant's Falcon was guilty of negligence proximately causing the boy's death. In Orme v. Burr, 157 Fla. 378, 25 So.2d 870 (1946), all occupants of a car were killed when it ran into a tree and there were no witnesses. The Florida Supreme Court, in an exhaustive discussion of the doctrine of res ipsa loquitur, quoted with approval the following excerpts from leading cases on the subject:
"There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." Scott v. The London & St. Katherine Docks Co., 2 H. & O., 596.
"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is *21 evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff." Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815, Ann.Cas. 1914D, 905.
In St. Petersburg Coca-Cola Bottling Co. v. Cuccinello, 44 So.2d 670 (Fla. 1950), where a child in a private driveway was run over by a truck, the Florida Supreme Court cited the decision in the Orme case as an able discussion of the evidentiary rule of res ipsa loquitur, and went on to observe that circumstantial evidence may be sufficient to support the verdict without resort to the rule of res ipsa loquitur, saying:
"Without the benefit of the rule of res ipsa loquitur, the physical facts testified to are sufficient, when coupled with admissions of the truck driver in court and to the witness Applefield (if he is believed) from which it could reasonably be deducted that the child was in the driveway ahead of the truck, * * *."
It is well established in this jurisdiction that when circumstantial evidence is relied on in a civil case, the particular inference relied on to establish the fact must outweigh all contrary inferences to such an extent as to amount to a preponderance of all reasonable inferences that might be drawn from the same circumstances. That rule necessarily contemplates the existence of evidence from which contrary though equally reasonable inferences might be drawn; that the state of the evidence is such as to preclude entry of a directed verdict. Budgen v. Brady, 103 So.2d 672 (Fla. App. 1958). But this is not to say that once an issue of fact is established by competent circumstantial evidence, in conformity with the foregoing rule, the fact so established is thereafter to be treated as an inference for the purpose of testing the use of circumstantial evidence to establish an independent material fact.
This jurisdiction is committed to the rule that in the limited field of rearend collisions, and where the leading vehicle is located within its proper place on the highway, proof of an accident such as is here involved raises a presumption of negligence on the part of the overtaking vehicle. Rianhard v. Rice, 119 So.2d 730 (Fla.App. 1960); Shedden v. Yellow Cab Company of Miami, 105 So.2d 388 (Fla. App. 1958); McNulty v. Cusack, 104 So.2d 785 (Fla.App. 1958). Appellant insists that this rule is only applicable to a situation where the leading vehicle has lawfully come to a stop on the public highway and is struck from the rear by an overtaking vehicle. We do not think it is restricted to such a narrow construction. We hold that it is available to raise a naked presumption of negligence in any case where there is no direct testimony available and the facts are such as to raise a reasonable inference that the operator of the leading vehicle was exercising due care. Under such circumstances the operator of the overtaking vehicle is in the most favorable position to introduce evidence reflecting due care on his part, the effect of which is to dissipate the presumption. Attending this concept is the general rule that in the absence of evidence as to the circumstances attending an accident, one injured in his person or property through the negligence of another in the operation of a motor vehicle upon the highway will be presumed to have used due care for his safety. Town of Palm Beach v. Hovey, 115 Fla. 644, 155 So. 808 (1934); Murden v. Miami Poultry & Egg Co., 113 Fla. 870, 152 So. 714 (1934); Blashfield, Vol. 9B, Cyclopedia of Automobile Law and Practice, section 6051.
*22 Applying what we have said to the evidence adduced in this case, it is abundantly clear that the jury was entitled to conclude that defendant's automobile alone was the overtaking vehicle involved in the accident, and that in so concluding it was not necessary to build inference upon inference. The evidence was also sufficient to support a finding of negligence on the part of the operator who apparently did not stop or otherwise show any normal reaction after striking the deceased, for these acts suggest lack of control of faculties or a degree of callousness of which no sober person would be guilty.
A person driving an automobile does not ordinarily run down bicyclists or pedestrians on the highway, and if he does, he takes some notice of it, even if he ultimately decides on flight or falsehood to protect himself. If he decides on flight, it calls into operation the presumption of conscious guilt, commonly inferred therefrom in criminal cases and properly to be considered in civil cases. If he decides on falsehood, the doctrine stated by Wigmore on Evidence, Vol. 2 (3rd ed.), Section 278, page 120, applies:
"* * * it has always been understood  the inference, indeed, is one of the simplest in human experience  that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit [emphasis added]."
Section 317.852, Florida Statutes, F.S.A., requires high-beam headlights to show objects 350 feet ahead and low-beam to show objects 100 feet ahead. As suggested by the Florida Supreme Court in Orme v. Burr, supra, accidents such as that which occurred in the instant case do not happen when due care is observed. Negligence has been visited upon one whose headlights were required to show 300 feet and who in driving an automobile at night ran over a prone figure on the highway. Kriesak v. Crowe, D.C., 44 F. Supp. 636. Cf. Lucier v. Norcross, 310 Mass. 213, 37 N.E.2d 498, 137 A.L.R. 749 (1941).
The only other issue on this appeal is whether the jury was entitled to conclude from the evidence that the automobile was operated by the defendant or by some other person with his knowledge and consent. On this issue of fact, the jury had before it the positive testimony of several witnesses identifying the defendant as having been the driver of his Falcon automobile on the night of the accident. Opposed thereto is the testimony of the defendant to the effect that he changed cars about 3:00 a.m., leaving his Falcon at his residence and driving off in his Buick, and that thereafter some person unknown to him took the Falcon away from his home and after the accident returned it without his knowledge. This left a question of fact exclusively for the jury to resolve and did not require the building of inference on inference in order to reach a conclusion.
The word "inference" has a twofold use: first, to describe a conclusion which the law draws without direct proof from an admitted antecedent fact; and second, the factual conclusion that a jury may draw from sufficient circumstantial evidence. A striking example of the former is the statutory inference by which the owner is held responsible for operation of a motor vehicle if his ownership thereof and identity of the driver be shown. Another example of the first use is the inference that one who breaks and enters a building wherein is a stock of goods intends to steal from the stock. The second use of the word, as above stated, is to describe the factual conclusion which a trier of fact is entitled to draw from sufficient circumstantial evidence, e.g., the origin of the fire as inferred in Shepherd v. Finer Foods, Inc., *23 165 So.2d 750 (Fla. 1964). These two uses of the words are often confused but they are wholly dissimilar.
The doctrine prohibiting inference on inference to arrive at a conclusion that is not supported by other direct proof of an admitted or established antecedent fact derives from the opinion of Judge West in Gustine v. State, 86 Fla. 24, 97 So. 207 (1923), where a trespasser was found tampering with the ignition of a parked car and was convicted of an attempt to steal. Our Supreme Court held that the intent to operate and use unlawfully might be inferred from the tampering, but that it was improper to add to this a further inference that the accused intended to permanently deprive the owner of his property. While there may be some confusion as to the opinion of the Florida Supreme Court in Shepherd v. Finer Foods, Inc., supra, reversing the decision of this court reported in 156 So.2d 390, there is no question that it holds, in accordance with ancient principles, that a legal inference may be founded upon facts established by either direct or circumstantial evidence.
In the case of Commercial Credit Corporation v. Varn, 108 So.2d 638 (Fla.App. 1959), this court, speaking through Mr. Justice Thornal of the Florida Supreme Court, associated on the appeal, reversed a judgment for plaintiff in a slip-and-fall case. As said there:
"Circumstantial evidence certainly may be relied upon as a basis for recovery in civil actions. Tucker Brothers, Inc. v. Menard, Fla. 1956, 90 So.2d 908. The rule is clear, however, that the inference of the existence of an essential fact to be drawn from circumstantial evidence cannot be made the basis of a further inference of an essential fact, unless it can be said that the initial inference was established to the exclusion of any other reasonable inference."
* * * * * *
"In civil cases if the proved circumstances justify an inference pointing to an essential fact which inference outweighs all reasonable inferences to the contrary, it can then be said that a conclusion as to the existence of the ultimate fact is justified by the circumstantial evidence. Tucker Brothers, Inc. v. Menard, supra. However, the established rule of evidence is that we cannot construct a conclusion upon an inference which has been superimposed upon an initial inference supported by circumstantial evidence unless the initial inference can be elevated to the dignity of an established fact because of the presence of no reasonable inference to the contrary. Voelker v. Combined Ins. Co. of America, Fla. 1954, 73 So.2d 403. See also Wigmore on Evidence, Vol. 1, Sec. 41."
The conclusion reached in that case rested on the fact that the trial court erroneously permitted the jury to draw the inference of a negligently-kept floor from the fact that plaintiff slipped and fell thereon, and then, without further evidence of causal connection, permitted the jury to infer that her fall was not due to her own stumble but because of the negligently-kept floor, i.e., "A" proves "B" and "B" proves "A". In that case we particularly noted the absence of circumstances which might have induced the conclusion that the floor was negligently kept, such as wax that was found on her shoe, a skid mark on the wax said to be on the floor, or that there was an accumulation of wax thereon at the time of her fall.
Finding no error, the judgment appealed is
Affirmed.
WIGGINTON and CARROLL, DONALD K., JJ., concur.