207 So.2d 718 (1968)
Valarie V. STEPHENS, Appellant,
v.
Hugo DICHTENMUELLER, Individually, and d/b/a Fort Lauderdale Grocery Co., and Major C. Washington, Appellees.
No. 1101.
District Court of Appeal of Florida. Fourth District.
March 13, 1968.
*719 Larry Klein, of Cone, Wagner, Nugent, Johnson, McKeown & Dell, West Palm Beach, for appellant.
Burl F. George, of Carey, Dwyer, Austin, Cole & Selwood, Fort Lauderdale, for appellees.
REED, Judge.
The appellant, Valarie V. Stephens, was the plaintiff, and appellees, Hugo Dichtenmueller and Major C. Washington, were the defendants in the trial court.
The plaintiff filed a complaint under the wrongful death statute, Chapter 768, F.S. 1965, F.S.A. in the Circuit Court for Broward County, Florida, on 15 April 1966 in which she alleged that on 5 January 1965 the defendant Major C. Washington negligently drove a van type truck owned by the defendant Hugo Dichtenmueller onto a highway and into the path of a motorcycle operated by the plaintiff's husband, Howard Edward Stephens, in a westerly direction and caused a collision between the two vehicles which resulted in the death of the plaintiff's husband. At the time of the accident the defendant Major C. Washington was allegedly the agent or employee of the defendant Hugo Dichtenmueller.
The answer of the defendants denied the allegations of negligence and alleged that the deceased was guilty of negligence *720 in the operation of the motorcycle, which was the sole or a contributing proximate cause of the collision.
The defendants filed a motion for summary judgment which was granted and a summary final judgment was entered in favor of the defendants on 19 September 1966. The plaintiff appeals from this summary final judgment.
Because of our conclusion, the only point presented by the plaintiff which will be discussed is the propriety of the trial court's order granting the motion for summary judgment and the entry of the summary final judgment.
The motion for summary judgment was supported by the deposition of the defendant Major C. Washington and one Henry Miller who at the time of the accident was a passenger in the truck and an employee of the defendant Dichtenmueller. The deposition of Major C. Washington indicates that just prior to the accident he had been driving the truck west on a state road in Broward County, Florida. He stopped at a grocery store on the south side of the road for the purpose of making a delivery of groceries to the store. Defendant Washington pulled the truck off the road and backed it up to the store to facilitate the unloading of the groceries.
According to the depositions, the road at the location of the store was two lanes and straight in both directions.
Defendant Washington testified that after the delivery was made he pulled the truck up to the edge of the highway and looked to the east. He also testified that his passenger who was serving as his helper stood on the right hand running board of the truck and looked to the east. Defendant Washington testified that after looking both ways he pulled out onto the road heading in a westerly direction. He stated that he at no time saw the motorcycle coming from the east prior to the collision.
The defendant Washington testified that after he left the store and had gone "quite a piece" down the road something struck the truck from the back. He gave no more specific testimony as to the distance between the point where he pulled out onto the highway and the point where the accident occurred, but he did testify that he had been moving at least for a "couple of minutes" before the accident occurred and that his speed at the time of the accident was somewhere between twenty and twenty-five miles an hour. Washington testified that at the time of the accident the truck was out of low gear, but had not been shifted into high gear. He stated that the accident occurred on a clear day in the late afternoon and the truck lights were on.
Defendant Washington said that after the impact he walked back of the truck and there saw a motorcycle caught in the right rear wheels of the truck and the deceased lying back of the motorcycle.
The passenger in the truck, Henry Miller, testified that when the truck pulled away from the store and approached the south edge of the highway he got out on the right running board and looked to the east. He stated that nothing obscured his view and the road was straight. He saw one vehicle coming towards the truck from the east, and he and Washington waited until it passed. After the vehicle passed, the road was clear to the east except for one automobile which was a considerable distance east of the truck. He stated that there was nothing between the truck and that automobile and that the truck pulled out and proceeded west on the road. There was no vehicular traffic coming from the west going east at this time. After pulling out onto the road, but prior to the impact with the motorcycle, the passenger testified the truck was passed by one automobile going in the same direction as the truck.
Miller testified that the truck was on the road and in its lane of traffic at the time the accident occurred, but did not know how far the truck had traveled from the grocery store when the accident occurred.
*721 Miller had no estimate as to the speed of the truck at the time of the accident, but testified that it might have been going more than ten miles an hour. He also testified that the truck had its lights on, which included a tail light on the back of the truck and clearance lights on the top of the back of the truck.
The deposition of Miller corroborated the testimony of the defendant Washington to the effect that the impact occurred on the truck from the rear. Miller testified that prior to the impact there was no sound of brakes. Upon impact the truck was brought to a stop, and he got out and proceeded to the rear of the truck where he saw a man on the ground and the motorcycle up under the rear of the truck.
In opposition to the motion for summary judgment, the plaintiff submitted an affidavit by a person who described himself as a registered professional engineer maintaining an office in Gainesville, Florida. The engineer's affidavit stated that he had investigated between 900 to 1,000 automobile accident cases during the past twelve years and that he had testified at the trial of approximately one hundred of these cases as a "traffic accident reconstruction expert". The affiant stated in his affidavit that he had reviewed "* * * investigative reports, accident reports, engineering drawings, measurements, photographs of the scene of the accident and the depositions of the witnesses * * *", and had formed an opinion as to the cause of the accident. The affiant expressed an opinion, based on "the presence and location of the skid marks, the maneuvering of the motorcycle and the position of impact" that the reaction time of the operator of the motorcycle was normal and based on "the photographs and physical facts of the accident, that the truck involved in the accident was in fact cutting in on the motorcycle at the time the accident occurred."
In the case of McNulty v. Cusak, Fla. App. 1958, 104 So.2d 785, the court held that where a collision occurs between a vehicle lawfully stopped at a traffic light and a vehicle approaching from the rear, there is presumption that the collision was caused by the negligence of the vehicle approaching from the rear and that such presumption would require a directed verdict for the lead vehicle in the absence of evidence tending to show that the negligence of the rear vehicle did not cause the collision. Shortly after the McNulty case was decided the presumption rule was held to apply to a collision between a vehicle stopped and waiting to turn left and a vehicle approaching from the rear, Cooper v. Yellow Cab Co. Inc., Fla.App. 1958, 106 So.2d 436 and also to a collision which occurred between a vehicle lawfully stopped in a line of traffic and a vehicle approaching from the rear, Shedden v. Yellow Cab Company of Miami, Fla.App. 1958, 105 So.2d 388. More recent decisions have held that the presumption of negligence also applies in favor of the lead vehicle when struck from the rear while moving and located in its proper place on the highway, Rianhard v. Rice, Fla.App. 1960, 119 So.2d 730; Busbee v. Quarrier, Fla.App. 1965, 172 So.2d 17, 21; and Shaw v. York, Fla.App. 1966, 187 So.2d 397.
The effect of the presumption is to conclude the issue of negligence against the driver of the following vehicle in the absence of evidence which tends to contradict the presumed fact, namely, the negligence of the vehicle striking from the rear. In Gulle v. Boggs, Fla. 1965, 174 So.2d 26, 28, the court said with respect to the presumption:
"* * * It is constructed by the law to give particular effect to a certain group of facts in the absence of further evidence. The presumption provides a prima facie case which shifts to the defendant the burden to go forward with the evidence to contradict or rebut the fact presumed. When the defendant produces evidence which fairly and reasonably tends to show that the real fact is not as presumed, then the impact of `the presumption *722 is dissipated'. Whether the ultimate fact has been established must then be decided by the jury from all of the evidence before it without the aid of the presumption. * * *"
The plaintiff urges that the aforementioned presumption is a rule of evidence to be given effect at trial, but not to be applied in the summary judgment procedure. Because the purpose of the summary judgment procedure is to determine the existence of an issue of fact, and the operation of the presumption is to give a particular effect to a certain group of facts, we can see no reason why the presumption should not apply to the summary judgment procedure, provided the facts which form the basis for the presumption are properly and conclusively shown.
The burden on a party moving for a summary judgment is to prove conclusively that there is no genuine issue of material fact to be tried and to show that he is entitled to a judgment as a matter of law, Holl v. Talcott, Fla. 1966, 191 So.2d 40, 43. The plaintiff contends that this burden requires the movant to make a conclusive showing that the opponent of the motion could not come forward with evidence to rebut the presumption of negligence arising out of the rear end collision. We do not believe that this is an accurate statement of the movant's burden. The plaintiff's contention has been expressly rejected by the Florida Supreme Court in Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780, 782, where the court relying on Hardcastle v. Mobley, Fla. App. 1962, 143 So.2d 715 stated:
"Obviously the Second and Third District Courts are in conflict on the point stated regarding the alleged burden of a movant to exclude every possible inference that the opposing party might have other evidence available to prove his case. We agree with Hardcastle that such a requirement is not a part of the burden imposed upon a summary judgment movant."
Whether or not the party moving for a summary judgment has made the conclusive showing required by Holl v. Talcott, supra, must of necessity be determined initially by the trial court on a case by case basis. Once the court determines that the movant has made the conclusive showing, it must then determine whether or not the opponent of the motion has made a showing that demonstrates the existence of an issue of material fact, Holl v. Talcott, supra.
In the present case the depositions of the defendant Washington and his helper, Henry Miller, demonstrate that at the time of the collision the defendant's vehicle was lawfully traveling west along the highway when struck from the rear by plaintiff's decedent. The defendant Washington testified that he had gone "quite a piece" down the road before the accident occurred and had been traveling "a couple" of minutes before the accident occurred. This testimony when coupled with the other deposition testimony to the effect that the road was straight and that at the time the truck pulled out onto the road the motorcycle was not in sight, will not permit an inference that the defendant was negligent in entering the highway in the face of oncoming traffic. The testimony conclusively demonstrated that the defendant's vehicle was in its proper lane at the time the accident occurred and was struck from the rear by the motorcycle driven by the plaintiff's decedent. On the basis of these facts, it is our opinion that the defendants conclusively demonstrated a situation giving rise to a presumption of negligence on the part of plaintiff's decedent and, therefore, conclusively demonstrated the nonexistence of genuine triable issues of material fact.
The question remains as to whether the affidavit submitted by the plaintiff in opposition to the motion for summary judgment fairly and reasonably tended to show the existence of a material issue of fact in relation to the contributory negligence *723 of the plaintiff. The affidavit of the plaintiff's expert indicated that it was based on "investigative reports, accident reports, engineering drawings, measurements, photographs of the scene of the accident and the depositions of the witnesses. * *" None of these documents appear to have been attached to or served with the affidavit and at least one of the documents, the accident report, may have contained privileged information. Although these factors standing alone might not have justified the court in rejecting the affidavit in view of the liberal treatment to be accorded the papers of a party opposing a motion for summary judgment, it is our opinion that the trial court could have rejected the conclusion embodied in the affidavit that the defendant's truck at the time of the accident was in fact "cutting in on" the motorcycle for either of two reasons. First, the trial court may have concluded that the affidavit did not affirmatively show that the affiant was competent to express the opinion contained in the affidavit as required by 1954 F.R.C.P. 1.36(e), (now F.R.C.P. 1.510(e), 31 F.S.A.). Determining the competency of a witness offered as an expert is peculiarly a matter within the realm of the trial judge whose determination of the qualifications of the witness and the range of subjects regarding which he can offer opinion testimony will not be reversed in absence of an abuse of discretion. Krohne v. Orlando Farming Corp., Fla.App. 1958, 102 So.2d 399; Seminole Shell Co. v. Clearwater Flying Co., Fla.App. 1963, 156 So.2d 543, 545. Secondly, the trial court may have considered that the opinion expressed was so vague and indefinite that it did not fairly and reasonably tend to demonstrate that an issue of fact existed as to negligence or contributory negligence.
Finally, the appellant asserts in her brief that at the hearing on the motion for summary judgment she made an oral motion to amend the affidavit or to supplement it by a deposition of the affiant and this motion was denied. On the basis of the record we cannot conclude that the plaintiff has sustained her burden of clearly demonstrating error in the trial court's denial of the oral motion, City of South Bay v. Armstrong, Fla.App. 1966, 188 So.2d 21.
Affirmed.
OVERSTREET, MURRAY W., Associate Judge, concurs.
CROSS, J., concurs specially.
CROSS, Judge (concurring specially).
I concur to the conclusion of the majority.
I must of necessity travel a different route than my brother judges have taken to reach this conclusion. The determinative problem before us is to consider the substantive and procedural aspects concerned when a movant seeking summary judgment bottoms his motion upon a rebuttable presumption of negligence.
In reaching a logical conclusion to our problem, we must of necessity first examine the nature and qualities of presumptions and their procedural effect.
A presumption is defined as an inference required by rule of law to be drawn as to the existence of one fact from the existence of some other established basic fact or facts. Presumptions are frequently classified as either conclusive or rebuttable. A conclusive presumption is a rule of substantive law which may not be overcome by evidence. It is now almost universally held that rebuttable presumptions are not themselves evidence nor are they entitled to be weighed on the scales as evidence. Rather they are recognized as "rules about evidence." They may be distinguished from inferences in that an inference is permissible whereas a presumption is mandatory. These presumptions compel a finding of the presumed fact in the absence of contrary evidence but having performed that office, they disappear in the face of countervailing evidence. 29 Am.Jur.2d, Evidence, § 164; Wigmore on Evidence, 3d ed., vol. IX, page *724 286, § 2490; Gard, Florida Evidence, Rule 59; Annot., 103 A.L.R. 185; 158 A.L.R. 747; 12 A.L.R.2d 1264; 5 A.L.R.3d 19; New York Life Insurance Co. v. Gamer, 1938, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218.
The Florida decisions, when read in their proper light, are in accordance with the above stated rule. See McKenna v. State, 1935, 119 Fla. 576, 161 So. 561.
The rule that presumptions are not to be treated as evidence is a shortened statement of the "Thayerian View" that the presumption is purely a procedural device for determining who must come forward with evidence on a particular point and loses all of its effect as soon as such evidence is provided. The Model Code of Evidence, Rule 704, provides that with the exception of the presumption as to legitimacy of a child born in wedlock, the proof of a basic fact upon which a presumption is based requires that the existence of the presumed fact be assumed only unless and until evidence has been introduced which will support a finding of the nonexistence of the presumed fact or until the basic fact of an inconsistent presumption has been established. It is provided that when the basic fact of a presumption has been established and evidence has been introduced which would support a finding of the nonexistence of the presumed fact or the basic fact of an inconsistent presumption has been established the existence or nonexistence of the presumed fact is to be determined exactly as if no presumption had ever been applicable in the action.
In many cases the Courts of Florida, apparently beginning with McNulty v. Cusack, Fla.App. 1958, 104 So.2d 785, have recognized and applied the rule that in rear end collisions a rebuttable presumption arises that the driver of the following car was negligent. See Gulle v. Boggs, Fla. 1965, 174 So.2d 26. As a corollary rule to the above stated one, this presumption provides a prima facie case which shifts to the driver of the following car the burden to go forward with evidence to contradict or rebut the fact presumed. When the driver of the following car has produced evidence to show that the real fact is not as presumed, the impact of presumption is "dissipated," and the question of whether the ultimate fact has been established must then be decided by the jury from all the evidence before it "without the aid of the presumption." Shaw v. York, Fla.App. 1966, 187 So.2d 397.
On a motion for summary judgment a party may be relieved of the necessity of offering evidence by invoking certain presumptions. Locke v. Stuart, Fla.App. 1959, 113 So.2d 402. In Florida, as in most states, a rebuttable presumption does not shift the burden of proof (persuasion) to the party against whom it operates but it does place on him the burden of producing evidence to disprove the presumed fact if he desires to rebut it.
At this point, a difficult and troublesome question arises. Assuming the existence of the rule in Florida that a presumption is not itself evidence and disappears from the case when contrary evidence is introduced, the problem is presented as to what quantum or quality of evidence is necessary to cause a rebuttable presumption to disappear.
Some courts require that the evidence must be "substantial." New York Life Insurance Co. v. Gamer, supra. Other courts have spoken of the necessity of credible evidence, Greene v. Willey, 1952, 147 Me. 227, 86 A.2d 82; Marie v. State, 1958, 204 Tenn. 197, 319 S.W.2d 86; for satisfactory proof, Harvey v. Benson, La. App. 1940, 198 So. 183. Prima facie evidence has been held necessary to meet and rebut the presumption, Seiler v. Whiting, 1938, 52 Ariz. 542, 84 P.2d 452. Evidence sufficient to raise an issue of fact for the jury, Tyrrell v. Prudential Insurance Co., 1937, 109 Vt. 6, 192 A. 184, 115 A.L.R. 392; or to satisfy the jury, New York Life Insurance Co. v. Beason, 1934, 229 Ala. 140, 155 So. 530.
*725 It has also been held that the presumption is ousted by a preponderance of the evidence or that even a fuller measure of evidence is necessary. A few courts have taken an extreme view that any evidence having a tendency to support the contrary of the matter presumed will oust the presumption. Professor Thayer states that there is no fixed rule as to how much evidence shall be required and that "[i]t may be merely enough to require the other side to answer; it may be enough to make out a full prima facie case; and it may be a great weight of evidence, excluding all reasonable doubt." Thayer, Evidence, App. B. Professor Wigmore speaks merely of evidence "sufficient to satisfy the judge's requirement of some evidence". Wigmore, Evidence, 3d ed., § 2491.
The Supreme Court in Gulle v. Boggs, supra, said:
"* * * When the defendant produces evidence which fairly and reasonably tends to show that the real fact is not as presumed, then the impact of `the presumption is dissipated'."
However, my research reveals no case which establishes the quantum or quality of evidence which would "fairly or reasonably tend to show that the real fact is not as presumed."
It is elementary that the courts do not raise such presumptions merely for the purpose of making the opponent of the presumption cause words to be uttered. It would be pointless to create a presumption and then endow it with coercive force only to allow it to vanish in the face of evidence of dubious weight or credibility. If the presumption is to be a useful procedural tool, a workable solution to the problem of what quality evidence is needed to rebut the presumption is of great necessity.
From an analysis of the cases dealing with this problem, I believe the following to be a sensible and workable solution: when the contrary evidence comes from such sources and is of such a nature that a rational and unprejudiced mind could not reasonably or properly reach a conclusion other than the nonexistence of the presumed fact, the presumption will disappear; on the other hand, whenever no countervailing evidence is offered or that which is offered is but a scintilla or amounts to no more than speculation and surmise, the presumed fact will stand as though proven.
In the instant case the plaintiff crashed into the rear end of the defendant's truck. Defendant was therefore armed with the rebuttable presumption that the plaintiff was negligent. The defendant moved for summary judgment, bottoming the said motion upon this presumption. At this point, although the burden of proof (persuasion) remained with the movant (the defendant here) and would not shift to the party moved against (the plaintiff here), there would however be placed upon the party moved against the burden of producing evidence of the quality alluded to above to disprove the presumed fact.
In opposition to defendant's motion for summary judgment and for the purpose of fulfilling her burden of producing evidence to disprove the presumed fact, the plaintiff proffered forth an affidavit by a person who described himself as a registered engineer. The sum and substance of this affidavit as alluded to by the majority was that the affiant considered himself a traffic accident reconstruction expert and he had formed the opinion that the cause of the accident was due to the defendant's truck cutting in on the motorcycle driven by the plaintiff's decedent. By submitting only this affidavit, which in the opinion of the majority as well as my own was vague and indefinite, the plaintiff was left with nothing to rebut the presumption of negligence but the merest surmise and conjecture. Such speculation will not suffice for evidence.
The plaintiff having failed to offer any evidence meeting the above alluded to test and tending to show that the decedent was *726 not negligent, even though the burden of going forward with evidence on this element of the case had shifted to her, the fact presumed, i.e., the negligence of plaintiff's decedent, stood as though proved, and the trial judge therefore quite correctly granted summary judgment to the defendants.