530 So.2d 995 (1988)
Carol Ann HAMMOND, As Personal Representative of the Estate of Michael Lynn Parker, Deceased, Appellant,
v.
JIM HINTON OIL COMPANY, INC., and Alvin J. Holmes, Appellees. Marie Ezell Agner, As Personal Representative of the Estate of Michael Mantzanas, Deceased, Appellant,
v.
JIM HINTON OIL COMPANY, INC., and Alvin J. Holmes, Appellees.
Nos. 87-1673, 87-1674.
District Court of Appeal of Florida, First District.
August 22, 1988.
*996 D. Andrew Vloedman and William N. Avera of Avera, Perry & Vloedman, Gainesville, for appellants.
W.C. O'Neal of O'Neal & O'Neal, Gainesville, for appellees.
ZEHMER, Judge.
This is a consolidated appeal from a jury verdict in a wrongful death action entered in favor of appellees Jim Hinton Oil Company, Inc. and Alvin J. Holmes. Appellants raise two issues: (1) whether the trial court erred in admitting portions of the Florida Highway Patrol Traffic Homicide Investigation Report into evidence; and (2) whether the trial court erred in denying appellants' requested jury instruction on careless driving. For the reasons stated below, we reverse.
These actions were filed pursuant to the Wrongful Death Act. Appellants alleged that on or about July 25, 1981, appellee Jim Hinton Oil owned a motor vehicle that was operated by appellee Alvin Holmes, and that Holmes negligently operated the vehicle so that it caused the motorcycle being driven by Michael Parker to collide with the rear of a Mustang being operated by Linda Hilson-Brown. Appellants contended that prior to the accident appellees' truck had been tailgating the Mustang for a considerable distance and that appellees' tailgating obstructed the rearward view of the driver of the Mustang and the forward view of the driver of the motorcycle, so that neither vehicle could see the other until it was too late to avoid a collision. As a result, Michael Hilson (age 17) and passenger Michael Mantzanas (age 15) suffered multiple injuries that caused their deaths. The cases were consolidated and a jury trial held in September 1987.
Clyde Merritt of the Florida Highway Patrol was sent to the scene of the accident as a vehicular homicide accident investigator. Over appellants' objections, Merritt testified about two diagrams that were part of his Florida Highway Patrol Traffic Homicide Investigation Report and the diagrams were admitted into evidence. Exhibit A is a photocopy of a reconstruction diagram that Merritt drew based on the physical evidence at the scene and the measurements turned over to Merritt by another officer coupled with the statements of witnesses. Exhibit B is a photocopy of the final rest diagram of the homicide investigation which Merritt drew up based upon the measurements and physical evidence he observed at the scene and the measurements given to him by Sheriff Whittle.
Linda Hilson-Brown, the driver of the Mustang, testified that when she first noticed the tanker it was about 100 yards behind her but that as she proceeded down the highway
He just followed me closer. He got, I don't know, he was right on me, you know, not too close, but the further we got to where I turn off all I could see was the truck.
He tailgated me for a long ways. And from the time, I'd say about 100 yards from where I turned he might have been five feet behind me.
All I could see in my rear view mirror and my side mirror was the grille, that's all I could see.
(T. 162). Ms. Brown stated that when she signaled and slowed to make her turn the truck did not back off in any way. She also stated that she never saw the motorcycle prior to the accident. Plaintiffs' accident reconstruction expert opined that given the position of the tanker behind Ms. Brown, Ms. Brown did not have an ample *997 opportunity to see or react to the presence of Michael Parker, and that correspondingly, Michael Parker had no opportunity to avoid the accident because he would not have been able to see the Mustang in time.
Appellee Alvin Holmes testified that he initially noticed Ms. Brown's vehicle about 1/2 mile ahead of him and was thinking about passing it when Ms. Brown signaled her intention to make a left-hand turn. Holmes backed off the accelerator and was about 100 feet behind the Mustang when he looked in his rear view mirror and "`Zoom,' and the motorcycle [was] passing [me] and she [Brown] had passed the center line, and it hit it." Holmes denied tailgating the Brown vehicle. Appellees' accident reconstructionist opined that the tanker was 147 feet east of the intersection at the time of the impact between the Mustang and the motorcycle. The jury returned a verdict in favor of the appellees.
Appellants first contend that the final rest diagram and reconstruction diagram were part of a traffic homicide report and thus were inadmissible pursuant to the accident report privilege contained in § 316.066. Section 316.066(3)(a), Florida Statutes (1987), provides in part that:
Every law enforcement officer who in the regular course of duty investigates a motor vehicle accident:
1. Which resulted in death or personal injury shall, within 24 hours after completing the investigation, forward a written report of the accident to the department.
The statute also provides that "[n]o such report shall be used as evidence in any trial, civil or criminal, arising out of the accident... ." See also White v. Kiser, 368 So.2d 952 (Fla. 1st DCA 1979). Tangible evidence of an automobile accident, such as location of accident, vehicle locations, skid marks and damage to vehicle observed by the investigating officer, are not confidential pursuant to § 316.066 and may be admitted into evidence by the investigating officer in an action arising from the accident. Brackin v. Boles, 452 So.2d 540 (Fla. 1984). Here, Officer Merritt testified that the diagrams were prepared as part of the homicide report he filed in the case. The diagrams were based not only on Merritt's personal observations but also on those of Sheriff Whittle (another investigating officer) and on statements given to Merritt by witnesses, including Ms. Brown, the driver of the Mustang. Because some of the information used to construct the diagrams was not based on first-hand knowledge and was based in part on the testimony of a driver of one of the vehicles involved in the accident, the diagrams were privileged under § 316.066 and it was error to admit them into evidence.
Appellees argue that any error in admitting these documents was harmless because this information was testified to by other witnesses. However, on direct examination Sheriff Whittle and Officer Merritt were questioned only about matters they actually observed at the scene of the accident. In addition, the diagrams did not show the tanker in the position testified to by Ms. Brown and appellants' expert, so the diagrams could be interpreted by the jury as contradicting the testimony presented by appellants' witnesses and being consistent with appellees' version of the accident. For this reason, we cannot agree that the error should be treated as harmless. See Dinowitz v. Weinrub, 493 So.2d 29 (Fla. 4th DCA 1986), in which it was held a violation of § 316.066 to admit an officer's testimony that a map he had drawn, which was based on the statement of the driver, indicated that the vehicle struck the pedestrian on the road rather than on the grass. The court found that this testimony was harmful in light of conflicting evidence as to whether the impact occurred on the roadway or on grass and the fact that the officer's appearance in boots and belt, coupled with 22 years as an officer, could have influenced the jury. 493 So.2d at 31.
Next, appellants contend the trial court erred in not giving their requested jury instruction on careless driving pursuant to § 316.1925, Fla. Stat. (1979),[1] because the entire theory of plaintiffs' case was that appellee Holmes operated the truck in a careless manner and that he drove it *998 without regard for other traffic on the highway in such a manner as to endanger the life of other people. Appellants argue that even though the court gave an instruction on following too closely pursuant to § 316.0895(1), they were prejudiced by the court's failure to give an instruction on careless driving, given appellees' arguments that the following too closely statute was designed only to protect the car ahead being tailgated, coupled with the court's refusing to construe that statute as applying to other vehicles on the roadway and restricting appellants from making any argument to the contrary. The trial court did not give the requested jury instruction because it felt that "it is doubled up to give careless and reckless [instruction] as well [as the instruction on following too closely contained in § 316.0895(1)]" (T. 387).
The trial court's refusal to give appellants' requested jury instruction based on § 316.1925, Fla. Stat. (1979), was error under the particular circumstances of this case. A party is entitled to have the jury instructed on his theory of the case when the evidence, viewed in a light favorable thereto, substantially supports the theory, even though that theory is controverted by the opposing party. Ryder Truck Rental, Inc. v. Johnson, 466 So.2d 1240, 1242 (Fla. 1st DCA 1985); Smith v. Lumbermen's Mutual Casualty Co., 360 So.2d 1098 (Fla. 1st DCA 1978). See also Seaboard Coastline R.R. Co. v. Addison, 502 So.2d 1241 (Fla. 1987) (violation of traffic ordinance is evidence of negligence, and when there is evidence of such violation, requesting party is entitled to have jury so instructed).
The evidence presented at trial supported appellants' theory that appellee Holmes operated the truck in such a careless manner so as to endanger the lives of others. Ms. Brown testified that Holmes "tailgated me for a long ways. And from the time, I'd say about 100 yards from where I turned he might have been five feet behind me" and that "all I could see in my rear view mirror and my side mirror was the grille, that's all I could see" (T. 162). In addition, plaintiffs' expert stated that given the position of the tanker behind Ms. Brown, Ms. Brown did not have an ample opportunity to see or react to the presence of Michael Parker, and that correspondingly, Michael Parker had no opportunity to avoid the accident because he would not have been able to see the Mustang in time.
The careless driving instruction could be treated as cumulative, and thus unnecessary, only if the following too closely statute had been construed by the court, as a matter of law, to protect not only the car being tailgated but other vehicles nearby as well and the jury had been so informed. The interpretation of that statute was a matter for the trial court to resolve, but it did not; instead, the meaning of the statute was left for the lawyers to argue and the jury to decide.[2] As appellants point out, given the fact that appellees consistently argued (in voir dire and closing arguments) that the following too closely statute was designed only to protect the car being tailgated, i.e., the Mustang, appellants were effectively left without an instruction that was applicable to their theory of the case that told the jury what the statutes of Florida required of the defendant truck driver.
The judgment is REVERSED and the case is REMANDED for a new trial.
SHIVERS and THOMPSON, JJ., concur.
NOTES
[1] Appellants requested the following instruction:

Section 316.1925 (1979) Careless Driving. 
(1) Any person operating a vehicle upon the streets or highways within the state shall drive the same in a careful and prudent manner, having regard for the width, grade, curves, corners, traffic, and all other attendant circumstances, so as not to endanger the life, limb or property of another person. Failure to drive in such a manner shall constitute careless driving and a violation of this section.
(R. 173)
[2] We decline to construe the statute at this stage. On remand, if the trial court construes the statute as applying only to the car ahead and not for the protection of the decedent's motorcycle, no instruction on the statute would be appropriate.