625 So.2d 45 (1993)
Aubry Allen GULLEY, as Personal Representative of the Estate of Annie Jean McMillan Gulley, deceased, Appellant,
v.
Willie Andrew PIERCE, Individually, Keller Industries, Inc., a Florida corp., Penske Truck Leasing, a foreign corp., Berneice Alberta DeRuiter, Individually, and Ray Linkhart, Individually, Appellees.
No. 92-2170.
District Court of Appeal of Florida, First District.
September 17, 1993.
Rehearing Denied November 5, 1993.
*46 Joseph M. Ripley, Jr., Jacksonville, for appellant.
*47 Daniel C. Shaughnessy and John J. Schickel of Coker, Myers, Schickel, Cooper & Sorenson, P.A., Jacksonville, for appellees Pierce, Keller & Penski.
H. Franklin Perritt and Alan K. Ragan of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellees DeRuiter & Linkhart.
ERVIN, Judge.
In this appeal from a final judgment entered in a wrongful death action, finding appellees Willie Pierce, the operator of a semi-tractor trailer; Keller Industries, Inc., Pierce's employer; and Penske Truck Leasing, the owner of the tractor-trailer, not liable for the death of Annie Jean McMillan Gulley, appellant raises the following issues: (1) whether the trial court erred in refusing to give plaintiffs' requested jury instructions relating to certain violations of the Uniform Traffic Control Law, and (2) whether the trial court erred in allowing an investigative criminal homicide detective to testify as an accident reconstruction expert. We affirm as to the latter issue, but reverse as to the lower court's refusal to give to the jury three of appellants' requested five jury instructions, and remand the case with directions.
In the late afternoon of August 21, 1990, an accident occurred at the intersection of U.S. 1 and Dunn Avenue, located in Jacksonville, Florida, which involved Pierce's tractor-trailer and a Ford Pinto automobile operated by appellee Berneice DeRuiter and occupied by appellee Ray Linkhart, the owner of the automobile. While Pierce was driving the truck northward in the left travel lane on U.S. 1, a four-lane highway divided by a median strip, the Ford Pinto, which had previously come to a stop before entering the intersection, proceeded forward on Dunn Avenue in a westerly direction, went across the two southbound lanes of U.S. 1 and the median into the truck's travel lane, and struck the left front section of the truck. Just before the impact, Pierce attempted to turn the truck to the right, but, following both his corrective action and the collision with the Pinto, he lost control of the truck, which swerved back to the left and crossed the median, both southbound traffic lanes of U.S. 1, then a ditch, and finally barreled into an adjacent trailer park where it struck three trailer homes, the last occupied by Annie Jean Gulley, causing her death. The jury rendered a verdict finding DeRuiter and Linkhart liable, but not Pierce, Keller Industries, or Penske, and assessed damages against DeRuiter and Linkhart in the amount of $70,000.
At trial, the theory of appellant's case against Pierce, Keller, and Penske was that if Pierce had reasonably reduced the speed of his truck before driving into the intersection, he could have avoided the collision with DeRuiter's automobile and the consequential, accidental death of Gulley. Pierce's experts offered evidence indicating the contrary, opining that the speed of the truck  assuming it was between 55-60 miles per hour  was reasonable under the circumstances and stating that if the truck's speed had been, for example, reduced to 40 miles per hour, the probability was that greater damage might have occurred because the DeRuiter automobile would have been struck in the vicinity of the passenger door, thereby potentially causing the deaths of its occupants. This testimony was submitted for the purpose of corroborating that of Pierce, whose defense was essentially that the accident was practically unavoidable; that he could not have reasonably anticipated that the Pinto, driven at a speed which Pierce estimated to be no greater than 15 miles per hour, would proceed into his lane of traffic for which he had the right-of-way. Following the accident, it was established that DeRuiter, the operator of the Pinto, then had a blood alcohol content of .18 percent.
Concerning appellant's first issue, the failure of the trial court to give certain requested jury instructions advising that violations of the Uniform Traffic Control Law are evidence of negligence, we reverse as to the lower court's failure to give instructions relating to (1) Section 316.1235, Florida Statutes (1989), requiring a vehicle to stop when approaching an intersection where traffic lights are inoperative; (2) Section 316.183, Florida Statutes (Supp. 1990), regarding unlawful speed; and (3) Section 316.076, Florida Statutes (1989), pertaining to a motorist's duty to proceed with caution at an intersection *48 at which flashing signals are located. We affirm, however, as to the court's refusal to advise the jury regarding instructions relating to Section 316.271, Florida Statutes (1989), requiring every motor vehicle operated on the highway to have a horn in good working order; and Section 316.261(7)(a), Florida Statutes (1989),[1] directing that a truck towing a trailer equipped with air brakes shall have two means of activating the emergency trailer brakes.
We agree with the trial court that no evidence was presented which could conceivably support the latter two instructions. The evidence convincingly displays that Pierce's truck was equipped with a horn and brakes which were operative, and that there were two means by which the emergency brakes could have been activated. The fact that the operator of the truck neither sounded the horn nor applied the brakes before the collision occurred does not justify the giving of the requested instructions, in that the specific conduct the two statutes prohibit is the operation of a vehicle with defective equipment. Cf. Estate of Wallace v. Fisher, 567 So.2d 505 (Fla. 5th DCA 1990).
Turning to the first requested instruction, pertaining to the effect of a violation of section 316.1235, we note that it was clearly supported by the evidence. Pierce testified that the yellow, blinking caution light located at the intersection where he collided with DeRuiter's automobile was not working. A traffic signal supervisor with the City of Jacksonville corroborated this, stating that on the evening of the accident, which occurred between 5:00 p.m. and 6:00 p.m., the north and southbound signals facing highway U.S. 1 were not functioning, whereas the east and westbound signals at the intersection were flashing red. On the other hand, Detective Massey with the Jacksonville Sheriff's Office stated that when he arrived at the scene shortly following the accident, the yellow, blinking caution lights for the northbound and southbound lanes were "pale."
Obviously, there was some evidence from which the jury could have concluded, if it had been appropriately instructed, that the flashing caution signals facing the northbound and southbound lanes of traffic at the intersection in question were inoperative, and that the driver's failure to stop was, under such circumstances, evidence of negligence. As the Florida Supreme Court observed in Seaboard Coastline Railroad Co. v. Addison, 502 So.2d 1241, 1242 (Fla. 1987), when there is evidence of a violation of a traffic ordinance, a requesting party is entitled to have the jury instructed on his or her theory of the case.
The appellees respond, however, that an instruction relating to a violation of section 316.1235 was inapplicable to the issues tried, because the statute refers to intersections controlled by "traffic lights," which signifies only the standard red, green, and yellow traffic lights which alternately stop traffic and then permit it to proceed;[2] whereas the evidence showed that the signal Pierce approached, if operative, would have revealed a continuous, flashing caution signal, which, in compliance with the provisions of section 316.076, directs the motorist to proceed through the intersection only with caution. If we understand appellees' argument correctly, they contend that while the Traffic Control Law requires motorists to stop before entering intersections at which are located inoperative traffic signals which, if functioning, would alternately direct the stopping and proceeding of traffic, motorists may nonetheless proceed through intersections where flashing traffic signals are inoperative. We cannot agree. We think it inconceivable that the legislature would sanction the potentially dangerous consequence that could attend a motorist's failure to stop before proceeding into an intersection where any traffic control signals are inoperative.
Two types of traffic control devices are defined within the Uniform Traffic Control Law. Official traffic control devices consist of "signs, signals, markings, and devices, ... placed or erected by authority of a public *49 body or official having jurisdiction for the purpose of regulating, warning or guiding traffic." § 316.003(23), Fla. Stat. (1989). The other, designated an official traffic control signal, is defined as "[a]ny device, whether manually, electrically, or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed." § 316.003(24), Fla. Stat. (1989). Because flashing red and yellow signals, described in section 316.076, do not control traffic by alternately directing it to stop and proceed, they are obviously not the type of signals defined in subsection (24). Nevertheless, an illuminated flashing signal is clearly included within the general definition of an official traffic control device under section 316.003(23), in that it is a signal which regulates, warns, or guides traffic.
We therefore conclude that by using the term "traffic lights" in section 316.1235, the legislature clearly intended to include both traffic control signal devices, as referred to in section 316.075, i.e., those which alternately direct traffic to stop and permit it to proceed, as well as those provided in section 316.076, i.e., flashing red or yellow signals, which respectively direct the motorist to stop and then proceed into the intersection, or proceed with caution through the intersection. In so deciding, we note that in 1971 the legislature enacted the Florida Uniform Traffic Control Law, which included the definitions for official traffic control devices and traffic control signals, as well as section 316.075 (originally numbered 316.138), and section 316.076 (originally numbered 316.133). Ch. 71-135, § 1, at 437, 482, and 484-86, Laws of Fla. Moreover, the expressed legislative intent behind the passage of the Uniform Traffic Control Law was "to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities." § 316.002, Fla. Stat. (1971). Additionally, all drivers of vehicles were required to obey the instructions of any official traffic control device, unless otherwise directed by a police officer. § 316.053(1), Fla. Stat. (1971) (now renumbered 316.074(1)). Finally, the 1971 legislative session provided for the imposition of criminal penalties for violations of any of the provisions of the chapter. See § 316.026, Fla. Stat. (1971) (now renumbered 316.655, and providing generally for the imposition of civil penalties).
It is a general tenet of statutory construction that statutes enacted during the same session of the legislature dealing with the same subject matter must be considered in pari materia in order to harmonize them and, at the same time, to give effect to the legislative intent. State v. Nourse, 340 So.2d 966 (Fla. 3d DCA 1976). In examining the provisions of the Uniform Traffic Control Law cited above, as originally enacted, it is clear that the legislature intended that all motorists approaching intersections equipped with continuous yellow caution signals proceed with caution; that such signals be included within the general definition of official traffic control devices; and that a violation of the particular law would subject the violator to a penalty.
The 1971 act did not, however, furnish any guidance to motor vehicle operators regarding what action they should take when approaching intersections where traffic signals are inoperative. To correct the omission, the legislature added section 316.1235 in 1977, requiring all drivers to stop in the same manner as required when approaching a stop intersection. See Ch. 77-229, § 2, at 1155, Laws of Fla. Another maxim of statutory construction is that if legislation involving a particular subject consists of a system of related provisions indicative of an established policy, all later enactments of a fragmentary nature on the general subject are to be taken as intended to fit within the existing system and to be put into effect in conformity with it. 49 Fla.Jur.2d Statutes § 175 (1984).
Therefore, after considering the above pertinent statutes in pari materia, and the legislature's intent that the Uniform Traffic Control Law provide uniformity, we conclude that the term "traffic lights," as used in section 316.1235, required the trial court to instruct the jury that a violation of the provisions of this statute was evidence of negligence.
Moreover, in that the evidence was conflicting concerning whether the caution signal at the intersection in question was *50 operative, the plaintiff was entitled as well to have her requested instruction given regarding a violation of section 316.076, advising the jury that Pierce's failure to proceed through the intersection with caution was evidence of negligence. See Robinson v. Gerard, 611 So.2d 605 (Fla. 1st DCA 1993); Sotuyo v. Williams, 587 So.2d 612 (Fla. 1st DCA 1991); Hammond v. Jim Hinton Oil Co., 530 So.2d 995 (Fla. 1st DCA 1988).
Finally, we agree that the trial court erred in refusing to instruct the jury that a violation of section 316.183, relating to unlawful speed, was evidence of negligence. The evidence was conflicting regarding whether Pierce exceeded the lawful posted speed just before the accident. Pierce testified that he was driving at no greater than 55 miles per hour, the lawful posted speed at the Dunn Avenue intersection. Two other witnesses testified to the contrary. One estimated his speed at approximately 70 miles per hour, and another at around 60 miles per hour. Under the circumstances, appellant was entitled to the requested instruction. See Robinson v. Gerard.
Turning to the second alleged error, that the trial court erred in allowing an investigative criminal homicide detective to testify as an accident reconstruction expert, we agree that the court did not err in ruling Detective Massey was so qualified. The decision whether a witness is qualified to testify as an expert is a factual determination falling within the broad discretion of the trial court, and a trial judge's ruling in such regard will not be disturbed unless a clear abuse of discretion has been shown. Dragon v. Grant, 429 So.2d 1329 (Fla. 5th DCA 1983). In the instant case, Detective Massey's qualifications included his investigation of approximately 144 traffic homicides, and his attendance at training sessions in the areas of traffic homicide, accident reconstruction, and DUI investigation. Although Detective Massey admitted that he had not previously testified as an expert witness in a civil case, he had been called upon in a number of criminal manslaughter cases to testify in such capacity. Moreover, most of Detective Massey's testimony was cumulative to that of another defense expert, Dr. Abal, whose opinion testimony has not been made an issue in this appeal. The rule is well established that even if error exists in the admission of expert testimony, the harmless error rule will be applied if such evidence is simply cumulative to other evidence admitted without objection. Quinn v. Millard, 358 So.2d 1378, 1383 (Fla. 3d DCA 1978). Accordingly, we find no abuse of discretion in the trial court's acceptance of Officer Massey as an expert witness.
Although we affirm as to this issue, we consider it helpful, because this case must be remanded for new trial as to the first issue, to provide some cautionary instructions to the trial court regarding the admission of Massey's testimony. First, a determination that a witness is qualified as an expert in a particular field does not necessarily mean that the specific expert opinion sought to be elicited should be admitted. As recognized in Holiday Inns, Inc. v. Shelburne, 576 So.2d 322, 335 (Fla. 4th DCA), cause dismissed, 589 So.2d 291 (Fla. 1991), there are four requirements for determining the admissibility of expert testimony. In addition to the requirement that the witness be qualified, the opinion evidence should be helpful to the trier of fact, the opinion evidence should be applicable to evidence offered at trial, and any prejudicial effect of the evidence must not outweigh its probative value.
The difficulty with a number of Detective Massey's opinions is that his opinions were neither helpful to the trier of fact, nor should his opinions have been applied to the evidence offered at trial, in that he was improperly asked to express an opinion which applied a legal standard to a given set of facts. See Town of Palm Beach v. Palm Beach County, 460 So.2d 879, 882 (Fla. 1984); Charles W. Ehrhardt, Florida Evidence § 703.1, at 513-14 (1993 ed.). For example, in answer to the question whether Pierce should have decreased his speed as he approached the intersection, Massey replied that Pierce had no reason to reduce his speed unless he perceived danger, and there was no danger which he could have realistically perceived until immediately before the collision. Massey also opined that a motorist could safely go through the intersection where the collision occurred in excess of the *51 posted speed limit of 55 miles per hour, stating that motorists frequently exceeded the speed limit there.
Thus, contrary to the requirement of section 316.076, providing that a motorist approaching an intersection with a flashing caution signal should proceed through the intersection only with caution, and that of section 316.183, stating that speed shall be appropriately reduced when approaching and crossing an intersection, Massey was in effect allowed to inform the jury that Pierce could ignore an operative caution signal and drive into the intersection within the legal maximum or at an excessive speed. This type of testimony should be excluded because it interferes with the trial court's function of determining the applicable law and instructing the jury thereon. See Williams v. Department of Transp., 579 So.2d 226, 231 (Fla. 1st DCA 1991).
AFFIRMED in part, REVERSED in part, and REMANDED for new trial as to all parties.
MINER, J., and WENTWORTH, Senior Judge, concur.
NOTES
[1] The parties erroneously refer to this statute as section 393.43(b).
[2] Florida's Uniform Traffic Control Law (Chapter 316, Florida Statutes) does not include a definition of traffic lights.