WARNER, J.
Appellant, John Robitaille, appeals the trial court’s summary denial of his motion for postconviction relief from his DUI manslaughter conviction. We affirm on all issues and write to address two issues. First, appellant contends that his trial attorney provided ineffective assistance by failing to object to the state’s toxicologist’s testimony regarding blood alcohol levels. When considering all of the evidence, we conclude that he has not shown Strickland prejudice. Second, we also conclude that he has failed to show that counsel was ineffective in failing to object to opinions an officer expressed, which were allegedly beyond the officer’s area of expertise.
Robitaille was charged with DUI manslaughter and manslaughter by culpable negligence for the death of Christopher Petrovich, the eight-year-old son of Robit-aille’s friend, Clinton Petrovich. Robitaille was driving an ATV and towing Christopher in a disabled go-cart. When Robit-aille made a turn, the go-cart flipped, and Christopher was thrown from the go-cart onto the road. Christopher received serious head injuries and later died. Robit-aille was found guilty at trial of DUI manslaughter but not guilty of manslaughter by culpable negligence.
As we said in Martelus v. State, 924 So.2d 881, 882 (Fla. 4th DCA 2006),
To prevail on a claim of ineffective assistance of trial counsel, a defendant must show that counsel’s performance was deficient and prejudicial. Deficient performance is that which falls below an objective standard of reasonableness considering the circumstances, and the test for prejudice calls for a determination of whether there is a reasonable probability that, but for counsel’s deficiency, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
In this case, Robitaille has not shown that but for counsel’s deficiencies the results would have been different.
At trial, Clinton Petrovich testified that Robitaille had come over to the Petro-vich house in the morning and stayed the rest of the day, working and riding on go-carts and dirt bikes. During that time, Petrovich observed Robitaille drink a few beers. After the accident, when the officers arrived, Robitaille admitted that he had consumed a few beers during the day, and the officer in charge informed Robit-aille that he had probable cause to request a blood sample. A paramedic drew Robit- *442 aille’s blood at the accident scene. Testing revealed that Robitaille’s blood alcohol level was .14 at the time of the draw, which was about three hours after the accident. In addition, some witnesses testified to Robitaille’s slurred speech, bloodshot eyes, and the odor of alcohol on his breath. Other witnesses did not notice any signs of intoxication. Robitaille himself testified that he did have some beers earlier in the day, but did not drink shortly before the accident.
The state’s toxicologist, Thomas Carroll, testified based upon a hypothetical proposed by the prosecutor regarding the blood alcohol level for a 36-year-old male, 5' 11" tall and 170 pounds. Although defense counsel objected to the hypothetical based upon facts not in evidence, the trial court overruled the objection, and Carroll testified that the blood alcohol level at the time of the accident could have been as high as .18 or as low as .09, both figures over the legal limit.
Susan Lewis, the toxicologist who actually tested Robitaille’s blood sample, was also asked to calculate Robitaille’s blood alcohol level at the time of the accident. However, she was given a hypothetical that the person was between 5'11" and 6'0" tall and weighed between 170 and 180 pounds and had eaten in the morning. Because the state supplied different facts, Lewis had a slightly different range indicating his blood alcohol level could have been as low as .081.
Robitaille now contends that his counsel was ineffective for failing to challenge this evidence and effectively cross-examine these witnesses, because they relied on inaccurate facts in calculating the blood alcohol level. Citing the arrest record,-Robitaille says when he was booked at the jail on the afternoon of the accident, he was 190 pounds and 6'0" tall. He also consumed snacks all day long.- Because his weight was higher and he consumed food throughout the day, it would have changed the range of the blood alcohol level at the time of the accident, which may have placed the lower level of the range within the legal limit.
We disagree that the use of the higher weight in the calculations would have reasonably changed the outcome of these proceedings so as to establish Strickland prejudice. Carroll testified that a person’s height and weight are important in calculating blood alcohol levels, because the height and weight indicate how much water is in the body. Carroll explained that whether a person has food in his or her stomach is also important because food can delay alcohol from entering the blood by up to four hours. However, Carroll and Lewis both testified at trial that for Robit-aille’s blood alcohol level to have been at the low end of the range, he would have had to consume all of the alcohol within fifteen minutes of the accident. For his blood alcohol level to have been at the high end of the range at the time of the accident, Robitaille had to have been drinking over an extended period of time, so that all of the alcohol was absorbed and he was in the elimination phase.
According to Robitaille’s own testimony at trial, he had his first drink around 9:30 a.m., and he expressly denied drinking within fifteen minutes before the accident. The accident occurred around 5:30 p.m. Based on Robitaille’s own testimony that he had consumed alcohol earlier in the day and not shortly before the accident, he has not shown that the corrected height and weight was likely to change the outcome in this case. The discrepancy in calculations would not have changed the result because of Robitaille’s own testimony on the timing of his alcohol consumption.
*443 In a second point, Robitaille also alleges ineffective assistance of counsel in failing to object when the investigating officer expressed opinions that the speed of the ATV as well as the length of rope contributed to the accident. Defense counsel objected to lack of foundation, and the state responded that the officer was an expert. We cannot find that the court ever expressly qualified the officer as an expert in accident reconstruction. However, based upon his experience to which he testified, there is no reason to believe the judge would not have found him qualified if defense counsel had raised an objection. See Gulley v. Pierce, 625 So.2d 45 (Fla. 1st DCA 1993) (a trial court has broad discretion in deciding whether a witness is qualified to testify as an expert).
Moreover, given the fact that the jury acquitted Robitaille of manslaughter by culpable negligence, we do not think that there is any reasonable probability that the outcome of the proceedings would have been different, even if the officer’s opinions were impeached, as they were more probative of negligence than the issues involved in DUI manslaughter. DUI manslaughter requires that the defendant, with a blood alcohol level in excess of .08, cause or contribute to an accident involving a death. § 316.193(3), Fla. Stat. Here, Robitaille operated the ATV pulling the go-cart. There was testimony that he was driving too fast, and other lay witnesses testified that they heard the ATV “racing up the street.” Therefore, even had the officer not testified, there would have been evidence that the operation of the vehicle contributed to the accident resulting in the death of the child. The evidence also showed that Ro-bitaille had a blood alcohol level in excess of .08. Therefore, the result would not have changed had the officer’s testimony been challenged or even excluded.
For these reasons, we conclude that the trial court did not err in summarily denying the motion for postconviction relief.

Affirmed.

STONE and KLEIN, JJ., concur.