POLEN, J.
 

 George Durse appeals the final judgment in favor of the appellee, Janice Henn, after the jury found Henn not liable for injuries Durse sustained following a car accident. Durse argues two points on ap
 
 *273
 
 peal: (1) that the trial court erred in admitting testimony regarding causation from the investigating officer, Officer Car-mack; and (2) that the trial court erred when it refused to allow Durse to present the full amount of his past medical bills to the jury. We agree with Durse on both points and reverse.
 

 Durse was a passenger in a vehicle driven by Cushman (the Durse vehicle). While the Durse vehicle was stopped, it was struck by Henn’s vehicle. At trial, the main dispute regarding liability was whether a vehicle driven by Keay hit Henn, causing Henn to hit Durse, or whether Henn first hit Durse and was then hit by Keay. Both Durse and Henn called accident reconstructionists to testify: Durse’s expert testified that Henn first ran into the Durse vehicle and that subsequently, the Keay vehicle struck the rear of Henn’s vehicle; Henn’s expert testified that the first event was Kea/s vehicle rear-ending Henn’s vehicle, which caused Henn’s vehicle to strike the Durse vehicle. Thus, there was conflicting testimony as to the issue of causation.
 

 At trial, Henn asked Carmack if he determined, as part of his investigation, what the first impact was; Carmack said “yes.” Durse then objected based on the accident report privilege,
 
 [1]
 
 arguing that Carmack’s pre-trial deposition testimony made clear that his conclusion was reached from statements made by drivers at the scene. Henn stated she was not asking about statements made, but only for part of Car-mack’s investigation that allowed him to make that determination. The trial judge responded: “If he knows, he’s entitled to say. Isn’t he sort of a semi-expert?” The trial judge then sustained the objection in part and overruled it in part. Henn then asked Carmack:
 

 [Without telling me any statements that were made to you in the course of your investigation, based on your experience, training, your investigation of the crash, and your physical observations that you made while you were at the scene of the crash, did you determine what the first impact was?
 

 Carmack responded: “Yes. The Keay vehicle hitting the Henn vehicle.” When questioned by Durse, Carmack testified that he did not conduct an accident reconstruction or a crush analysis, nor did he measure the property damage to the vehicles or try to determine what force with which each vehicle hit the other. Instead, Carmack testified that he basically took statements.
 

 In closing argument, Henn emphasized Carmack’s causation testimony:
 

 Who saw all the physical evidence? Not [the two accident reconstructionists], but Officer Carmack did, the police officer who went to the scene to investigate this crash. He had the opportunity to be out at the scene while the vehicles were there. He had the opportunity to observe the property damage which you have never seen, because we have no photographs of Mr. Durse’s vehicle. But the only person who did is Officer Carmack.
 

 And what did Officer Carmack tell us? What did he take the stand and tell you folks? I asked him, what was the first impact based on your experience, your training and your physical observations at the scene and of these vehicles? And without hesitation, Officer Carmack told you that my client was rear-ended by Mrs. Keay and pushed into the plaintiff. That’s the evidence. And there is no one who said they saw anything but that.
 

 
 *274
 
 In deliberations, the jury asked: “Where is the Palm Beach Gardens Police Report by Carmack? We can’t find it.” The trial court informed the jury that “it’s not part of the evidence.” The jury then found that Henn was not negligent.
 

 Durse argues that Carmack’s conclusion on who caused the first impact violated Florida’s accident report privilege because the source of his knowledge, as he admitted, was exclusively based on the statements he took at the scene; he admitted he did not conduct an accident reconstruction, a crush analysis, measure the property damage to the vehicles, or determine the forces involved in the collision. Henn argues that since Durse’s objection was sustained in part, he had an obligation to renew the objection or to move for a mistrial in order to preserve this issue for review, and because Durse did neither, he waived any objection to Carmack’s testimony. Henn further argues that Durse did not ask Carmack if his opinions were based solely upon the statements, but only whether he took statements; therefore, Henn contends that Durse failed to establish that Carmack’s testimony violated the accident report privilege.
 

 Rulings on the admission of evidence are reviewed for abuse of discretion.
 
 Hudson v. State,
 
 992 So.2d 96, 107 (Fla.2008) (citing
 
 Johnston v. State,
 
 863 So.2d 271, 278 (Fla.2003)). “Generally, when a court sustains a party’s objection, that party must seek a curative instruction and/or move for a mistrial to preserve appellate review of that objection.”
 
 Grau v. Branham,
 
 761 So.2d 375, 378 (Fla. 4th DCA 2000) (citing
 
 Ed Ricke & Sons, Inc. v. Green By and Through Swan,
 
 468 So.2d 908, 910 (Fla.1985)).
 

 We hold that Durse did not waive this issue for appeal. The trial judge sustained Durse’s objection as to Carmack testifying to the actual statements given to him by drivers at the scene of the accident (which he did not subsequently testify to) and overruled Durse’s objection to prevent Carmack from testifying as to his opinion of who caused the first impact (which he did subsequently testify to). Thus, Durse did not have to move for a mistrial in order to preserve; the issue was preserved because part of Durse’s objection was overruled.
 

 Regarding Florida’s accident report privilege, section 316.066(7), Florida Statutes (2007), provides in pertinent part:
 

 Except as specified in this subsection, each crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purpose of completing a crash report required by this section shall be without prejudice to the individual so reporting. No such report or statement shall be used as evidence in any trial, civil or criminal.
 

 In
 
 Hammond v. Jim Hinton Oil Co.,
 
 530 So.2d 995 (Fla. 1st DCA 1988), Officer Merritt testified that he prepared diagrams as part of the homicide report he filed in connection with a motor vehicle accident.
 
 Id.
 
 at 996-97. The diagrams were based not only on Merritt’s personal observations but also on those of another investigating officer and on statements given to Merritt by witnesses, including the driver of one of the vehicles in the accident.
 
 Id.
 
 at 997. “Because
 
 some
 
 of the information used to construct the diagrams was not based on first-hand knowledge and was based in part on the testimony of a driver of one of the vehicles involved in the accident,” the First District held that “the diagrams were privileged under § 316.066 and it was error to admit them into evidence.”
 
 Id.
 
 (emphasis added). The appel-lees in
 
 Hammond
 
 argued that any error in admitting the documents was harmless because the information was testified to by
 
 *275
 
 other witnesses.
 
 Id.
 
 However, relying on
 
 Dinowitz v. Weinrub,
 
 493 So.2d 29 (Fla. 4th DCA 1986), the court held the error harmful because the diagrams could be interpreted by the jury as contradicting the testimony presented by appellants’ witnesses and being consistent with appellees’ version of the accident.
 
 Id.
 

 In
 
 Dinowitz,
 
 the plaintiff called the investigating officer as a witness; on cross examination, the officer stated that his conclusion in his report that the defendant’s vehicle was entirely within the eastbound lane was not from his independent investigation but instead from what the defendant told him.
 
 Dinowitz,
 
 493 So.2d at 30-31. On appeal, this court held that the plaintiffs objections to this testimony should have been sustained and reversed the trial court, finding harmful error:
 

 Our concern lies with the effect of the officer’s parroting what the defendant told him as to the accident having occurred on the roadway, thus potentially giving the defendant an edge with the jury in the swearing match between the parties. Had the evidence — testimonial or otherwise — been, apart from that of the defendant, to the effect that the impact occurred on the roadway, we might be more convinced as to the harmless effect of the officer’s testimony. The officer’s appearance — boots and belt — coupled with twenty-two years as an officer in Florida and New York could have easily influenced one or more jurors in a favorable manner.
 

 Id.
 
 at 31. This court added: “The statute has a very important purpose; namely, to enable an investigating officer to learn the truth about the occurrence of an accident without the party so revealing it incriminating himself. To whittle away at the statute is contrary to public policy.”
 
 Id.
 

 We hold that the trial court abused its discretion in allowing Carmack to testify as to which car caused the first impact. The transcript makes clear that Carmack did not perform any kind of test to determine first impact, and instead, he only took statements. This testimony contravenes Florida’s accident privilege. Further, the error was not harmless. The record reflects that there was conflicting testimony presented as to which impact was the first impact, most notably between the two accident reconstructionists. As was held in
 
 Hammond
 
 and
 
 Dinowitz,
 
 Car-mack’s testimony, based primarily on statements made to him, cannot be said to have not influenced the jury’s verdict.
 

 Durse next argues that the trial court erred when it refused to allow Durse to present the full amount of his past medical bills to the jury. Henn filed a motion in limine to preclude Durse from presenting evidence of the full amount of his medical bills, arguing that Durse could introduce only the amount of medical bills which his provider accepted as final satisfaction of outstanding medical bills. After a hearing, the trial court granted Henn’s motion. Durse argues that the trial court’s ruling prejudices his ability to establish the value of future medical expenses and non-economic damages and contends that this is an issue that should be resolved post-verdict. Henn argues that under this court’s decision in
 
 Thyssenkrupp Elevator Corp. v. Lasky,
 
 868 So.2d 547 (Fla. 4th DCA 2003), the trial court properly limited introduction of the amount of medical bills to the amounts actually paid by Durse and accepted by his healthcare providers, rather than the original face value of the bills.
 

 “The collateral source rule functions as both a rule of damages and a rule of evidence. As a rule of damages, ‘the collateral source rule permits an injured party to recover full compensatory damages from a tortfeasor irrespective of
 
 *276
 
 the payment of any element of those damages by a source independent of the tortfeasor.’ As a rule of evidence, the collateral source rule prohibits the introduction of any evidence of payments from collateral sources, upon proper objection.” In Florida, the damages portion of the rule has been superseded by legislative action. However, the eviden-tiary portion of the rule remains alive and well in Florida.
 

 Nationwide Mut. Fire Ins. Co. v. Harrell,
 
 53 So.3d 1084, 1086 (Fla. 1st DCA 2010) (quoting
 
 Gormley v. GTE Prods. Corp.,
 
 587 So.2d 455, 457 (Fla.1991) (plurality opinion)) (internal citations omitted).
 

 In
 
 Thyssenlcrupp,
 
 the defendant sought a reduction in the award of medical expenses equal to the amount by which a provider’s charges were reduced upon acceptance from Medicare.
 
 Thyssenkrupp,
 
 868 So.2d at 549. This court held:
 

 Allowing the admission of evidence of the excess discharged by Medicare payment has the effect of providing an undeserved and unnecessary windfall to the plaintiff. It would also be contrary to the public purpose of reducing health care costs to allow inflated damage recoveries to stand without reduction. We therefore conclude that defendant is entitled to have the past medical expenses awarded by the jury reduced — to the extent such amounts are actually included in the past medical expenses awarded — by the difference between the amounts charged by a provider and the amounts actually paid that provider by Medicare. On remand the trial court is authorized to receive such evidence as may be necessary to fix the precise amount of the reduction required by our decision today.
 

 Id.
 
 at 550 (internal citations omitted). In
 
 Nationwide,
 
 the appellant argued that the trial court abused its discretion when it permitted the appellee to introduce into evidence the gross amount of her medical bills, rather than the lesser amount paid by the appellee’s private health insurer in full settlement of the medical bills, because it misled the jury as to the true amount of the appellee’s damages.
 
 Nationwide,
 
 53 So.3d at 1085. In support, the appellant relied on a number of cases, including
 
 Thyssenlcrupp,
 
 which hold that it is reversible error to permit evidence of the gross amount of medical bills, rather than the amount actually paid in full settlement of those bills.
 
 Id.
 
 However, the First District noted that all of the appellant’s cases involved payments made on the plaintiffs behalf by Medicare, rather than a private insurance provider; as such, the First District concluded that these cases were distinguishable because, in
 
 Nationwide,
 
 the payments were made by appellee’s private health insurer.
 
 Id.
 
 at 1085-86.
 

 The
 
 Nationwide
 
 court relied on the reasoning set forth in
 
 Florida Physician’s Insurance Reciprocal v. Stanley,
 
 452 So.2d 514 (Fla.1984). In
 
 Stanley,
 
 the Florida Supreme Court held that evidence of governmental or charitable benefits available to all citizens should not be precluded by the evidentiary portion of the collateral source rule:
 

 We believe that the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care.... We find persuasive the following reasoning advanced by the Supreme Court of Illinois in refusing to allow a plaintiff a windfall recovery for the value of free medical services received in a charitable hospital:
 

 [T]he policy behind the collateral-source rule simply is not applicable if the plain
 
 *277
 
 tiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation. This is further made apparent upon comparison ... with a situation in which the collateral-source rule is frequently applied, that of the defendant who seeks a reduction in damages because the plaintiff has received insurance benefits. “It is a well-settled rule of damages that the amount recoverable for tortious personal injuries is not decreased by the fact that the injured party has been wholly or partly indemnified for the loss by proceeds from accident insurance where the tortfeasor did not contribute to the payment of the premiums of such insurance. This rule is usually justified on the basis that the wrongdoer should not benefit from the expenditures made by the injured party in procuring the insurance coverage.”
 

 Id.
 
 at 515-16 (quoting
 
 Peterson v. Lou Bachrodt Chevrolet Co.,
 
 76 Ill.2d 353, 29 Ill.Dec. 444, 392 N.E.2d 1, 5 (1979),
 
 overruled by Wills v. Foster,
 
 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018 (2008)) (emphasis in original). Thus, based on the foregoing, the
 
 Nationwide
 
 court held:
 

 [I]t is relatively clear that our supreme court intended to limit abrogation of the evidentiary portion of the collateral source rule to cases where the benefits received to reduce the cost of medical care were not earned (or paid for)
 
 in some way
 
 by the plaintiff. Here, there is no dispute that appellee paid the premiums for her health insurance. Accordingly, pursuant to the evidentiary portion of the collateral source rule as it currently exists in Florida, we hold that the trial court correctly ruled that appel-lee was entitled to introduce into evidence (and to request from the jury) the gross amount of her medical bills, rather than the lesser amount paid by appel-lee’s private health insurer in full settlement of the medical bills. In fact, the only Florida appellate decision we have been able to find that is directly on point reaches that result.
 
 Goble v. Frohman,
 
 848 So.2d 406, 410 (Fla. 2d DCA 2003) (relying on
 
 Gormley v. GTE Prods. Corp.), approved on other grounds,
 
 901 So.2d 830 (Fla.2005).
 

 Nationwide,
 
 53 So.3d at 1087 (emphasis added).
 

 Here, Durse’s medical bills were reduced by the medical providers Durse received treatment from as a result of the injuries he sustained in the accident. Unlike the appellees in
 
 Thyssenkrupp
 
 and
 
 Nationwide,
 
 Durse did not have health insurance. Although Durse did not pay the premiums for his health insurance, like the appellee in
 
 Nationwide
 
 (because he had no health insurance), by negotiating a lower amount, Durse “earned in some way,” within the meaning of
 
 Nationwide,
 
 the lowered final amount of his medical bills. The trial court erred by excluding the medical bills showing the full amount of the charges.
 

 Reversed and Remanded for a New Trial.
 

 WARNER and CONNER, JJ., concur.
 

 [1]
 

 . § 316.066(7), Fla. Stat. (2007).