IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


FU LU SONG AND AMERICAN TRUCKING COMPANY,

     Appellants,

 v.

                         Case No.  5D23-24
                         LT Case No. 2017-CA-003032-XXXX-MA

CLINTON JENKINS; MALISSA LEY
AND NICHOLAS WELBORN,

     Appellees.

_____/

Opinion filed March 31, 2023

Appeal from the Circuit Court
for Duval County,
Robert M. Dees, Judge.

Chris W. Altenbernd and Sarah
Lahlou-Amine, of Banker Lopez
Gassler P.A., Tampa, for Appellants.

Brent G. Steinberg, Daniel L.
Greene, and Jacob M. Schuster, of
Swope, Rodante P.A., Tampa, for
Appellee, Clinton Jenkins.

No Appearance for Other Appellees.


EDWARDS, J.

Appellants, Fu Lu Song and American Trucking Company, appeal several rulings leading to the verdict and final judgment for Appellee, Clinton Jenkins. The subject accident happened on Interstate 95 when Song's tractor trailer veered into the lane to its right to avoid hitting the car ahead of him, which slowed. Apparently to avoid Song's truck, a car swerved to its right and collided with a van in which Jenkins was a passenger. Song's truck did not collide with anything; he did not stop at the accident scene. The accident sequence was captured on another vehicle's dash camera. Appellants argue that the trial court erred in admitting into evidence: (1) irrelevant portions of the dash cam video, (2) the soundtrack of the dash cam video, and (3) a diagram of the accident sequence. We agree and reverse for a new trial on all issues.

<u>Sequence of Crash-Related Events</u>

The subject crash occurred south of downtown Jacksonville, Florida, on northbound I-95 when the roads were wet. Traffic was moving along, until those involved in this incident encountered heavier traffic that was moving slowly. Song was driving a semi-tractor trailer owned by American Trucking and was in the third lane from the right. When a vehicle ahead of him appeared to be stopping, Song veered, at least partially, from his lane to the right. This allegedly caused a car driven by Ms. Ley in the second lane from

the right, to swerve to her right, leading to the collision with the van in the furthest right lane.  Song returned to his original lane and continued traveling north.  He then moved one more lane to the left.  At trial, he explained that because he did not collide with any other vehicle, he did not think that he needed to stop even though he noticed the wreck in his mirrors as he drove along with the flow of traffic.

The dash cam that captured the collision belonged to Mr. Jordan, who was a short distance behind Song, with one vehicle separating Jordan from Song.  Jordan drove in the same lane as Song, heading northbound.  His truck was equipped with a forward-facing dash cam that had an open microphone audio system.  The dash cam recorded good quality visual images of the sequence of events prior to, during, and after the movements and wreck described above along with the simultaneously recorded good quality soundtrack primarily consisting of Jordan's comments about the wreck.

The dash cam video clip used at trial starts several seconds before Song swerves to his right and continues for more than five minutes.  The parties agreed that the first 48 seconds of the videotape's visual, silent images were relevant to show the weather and traffic conditions prior to the collision.  The first 48 seconds also showed Song and Ley's maneuvers, the

3

collision, and events soon after the collision, including Song moving to the far-left lane and driving north with the flow of traffic. However, after the first 48 seconds the video does not depict anything related to the collision. The traffic in the far-left lane that Song moved into, was traveling faster than the traffic in Jordan's lane, causing the two trucks to become separated.

The simultaneously recorded soundtrack of the dash cam system captured all of Jordan's wreck-focused comments which began with the epitome of excited utterances, including some cursing, regarding the startling collision-related events that had just unfolded in front of him. As Jordan continued driving north on I-95, he is heard on the dash cam audio recounting aloud to himself various comments about what he had just seen, his successful efforts to get the license tag number of Song's trailer, his opinion that Song was going too fast for conditions, and statements that Song caused the wreck. The soundtrack from the dash cam includes Jordan's call to 9-1-1 as he advised authorities of the wreck, relaying Song's tag number, his opinion that Song caused the wreck, and his statement that some injuries likely occurred in the wreck. The 9-1-1 call is heard after the first 48 seconds of the video. Throughout the video's soundtrack, Jordan can be heard commenting repeatedly that Song was not stopping and essentially that Song was fleeing from the scene of the accident. Jordan

4

promptly turned over a copy of his dash cam video with audio to the Florida Highway Patrol.

Jenkins proposed to introduce more than five minutes of both video and audio from Jordan's dash cam. Appellants filed motions in limine and made repeated objections about it during trial. Appellants initially objected to the entire video and its soundtrack, but later conceded that the first 48 seconds of silent video were relevant and admissible. Appellants maintained their objection that any video after the first 48 seconds was irrelevant to any issue of negligence, causation, or damages. They further argued that all of the soundtrack was inadmissible due to it being irrelevant as the video was complete in depicting the accident without having to hear Jordan swearing or describing what can otherwise be seen on the video. Appellants also objected to admission of the soundtrack on the grounds that it contained improper lay opinions regarding Song traveling too fast, who was at fault, and that the accident likely caused injuries. Additionally, Appellants objected to Jordan's repeated comments heard on the soundtrack that Song was fleeing the scene of the accident as being irrelevant and more unfairly prejudicial than probative under a section 90.403, Florida Statutes analysis.

At one point, the trial court seemed to largely agree with the Appellants that only the first 48 seconds of the video, although with soundtrack, should

be played for the jury, as that portion showed the sequence of events and vehicles involved in the collision. Ultimately, the trial court overruled all objections made by Appellants and allowed Jenkins to play the five-minute video with soundtrack or shorter excerpts from the same five minutes, during various phases of the trial. Relatedly, the trial court permitted Jenkins to argue, over Appellants' objection, using the lengthy video and Jordan's comments, that Song was indeed fleeing the scene of the accident which was proof that he was at fault. That led to Jenkins' arguments that Song should be found 100 percent at fault, with no apportionment of fault (which he called a "discount") to any other driver and for the jury to send a message by its verdict that "says you don't flee from the scene . . . then come in here and get a discount."[1] There was no evidence suggesting that anybody's injuries were made worse or longer-lasting because Song did not stop. Jenkins seemingly, though not explicitly, used the long dash cam video of Jordan's slow pursuit of Song with Jordan's running commentary as though

---

[1] This argument is indicative of the nature and tenor of Jenkins' trial theme regarding Song not stopping at the scene. However, there was no objection during trial to the clearly improper "send a message" closing argument, nor do Appellants raise that as a ground for reversal.

it were an episode of "Cops" with Song featured as the "bad boy" being brought to justice before the jury.[2]

"As a general rule, a trial court's ruling on the admissibility of evidence will not be reversed, absent an abuse of discretion." *McCray v. State*, 919 So. 2d 647, 649 (Fla. 1st DCA 2006). "However, a court's discretion is limited by the evidence code and applicable case law. A court's erroneous interpretation of these authorities is subject to *de novo* review." *Id.*; *see also Bauduy v. Adventist Health Sys./Sunbelt, Inc.*, 288 So. 3d 87, 89 (Fla. 5th DCA 2019).

"Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2021). "The basic and critical issue is whether the defendant was guilty of negligence which proximately caused the matter about which complaint is made." *Lynch v. McGovern*, 270 So. 2d 770, 771 (Fla. 4th DCA 1973). The first 48 seconds of the silent dash cam video are clearly relevant to that issue. However, none of the dash cam video, after 48 seconds, sheds any light on any issue of liability or damages. "The conduct of the defendant coming after the collision and incurrence of injuries could have no proximate or causal relationship to the negligence or causal

---

[2] The show's theme song, "Bad Boys," was performed by the reggae group, Inner Circle.

7

relationship to the negligence or liability question." *Id*. Accordingly, we hold that the trial court erred in admitting any portion of the silent dash cam video beyond the 48 second point.[3]

As for the soundtrack from the dash cam video, Appellants argued pursuant to section 90.403 that it should have been excluded based on its probative value being greatly outweighed by unfair prejudice. Portions of the audio were possibly relevant, such as Jordan's excitedly cursing about the wreck to confirm that he was a percipient witness, saying that he got the truck's tag number to confirm it was Song's truck, and commenting that Song was not stopping. However, those were all cumulative of Jordan's testimony. Appellants did not contest whose truck or driver were depicted in the video, nor did Song claim that he stopped. The repeated comments on the soundtrack that Song was fleeing the scene were unfairly prejudicial and irrelevant. Notwithstanding Jenkins' arguments to the contrary, Jordan's lay opinions that Song was going too fast for conditions and that Song caused the wreck were not admissible and invaded the province of the jury. We hold that admitting the soundtrack under these circumstances was an abuse of

---

[3] We acknowledge that a defendant's post-accident conduct may be relevant in certain limited circumstances not present here. For example, in the case of identifying a hit-and-run driver who was likely intoxicated as his car definitely was the vehicle that ran over a paperboy. *Busbee v. Quarrier*, 172 So. 2d 17 (Fla. 1st DCA 1965).

8

discretion under section 90.403 and legal error to the extent irrelevant evidence was presented to the jury via the audio.

## Accident Report Diagram

Appellants argue that the trial court erred in permitting Jenkins to use a diagram that was part of the official traffic crash report. The diagram purports to show the path of Song and Ley's vehicles leading to the crash. Appellants objected that it was not to scale and demonstrably inaccurate in its depiction of events when compared to the dash cam video. Jenkins "authenticated" the accident diagram through the testimony of Jordan who said it appeared accurate to him; however, Jordan admitted that he had nothing to do with the diagram's creation. Jordan also confirmed that he was not an engineer, biomechanic, or accident reconstructionist. No evidence was presented regarding who prepared it, who provided whatever information was considered, nor how the path of each vehicle was determined. That diagram was essentially a non-verbal depiction of opinions formulated by an anonymous witness, relying on unknown information, employing an undisclosed methodology.

Initially, over Appellants' objections, Jenkins convinced the trial court to allow him to use the diagram as a "demonstrative aid." He argued that counsel could get any one of the percipient witnesses to step over to the

9

ubiquitous courtroom easel to draw a similar diagram. We acknowledge that many such simple diagrams prepared in court are usefully employed as a demonstrative aid to generally orient the jury to the accident scene, location of witnesses, etc.

Appellants additionally objected to the use of the diagram based on the accident report privilege contained in section 316.066(4), Florida Statutes (2021), which provides in pertinent part:

> each crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purposes of completing a crash report required by this section shall be without prejudice to the individual so reporting. Such report or statement may not be used as evidence in any trial, civil or criminal.

Jenkins claims that by redacting all text and other official indicia on the accident diagram connecting it with law enforcement and accident reports, and by never referring to it as part of the traffic crash report, the statutory privilege did not apply. Jenkins points out that nobody proved the diagram was based on any statements from Song, Ley, or Jenkins thereby taking it out of the scope of privilege. Appellants ask us to find that the term "such report" in the above statutory section refers to all parts of traffic reports, regardless of who prepared the report and whether or not the proffered portion of the report was based upon the statement of a person involved in

10

the crash.  We decline Appellants' invitation to make any pronouncement beyond the existing boundaries established by the statute and existing case law interpreting it.  If the diagram was based, in whole or in part, on information provided by any of the people actually involved in the accident it would be inadmissible; however, no proof one way or the other was offered on that issue.  *See, e.g.*, *Durse v. Henn*, 68 So. 3d 271, 275 (Fla. 4th DCA 2011); *Hammond v. Jim Hinton Oil Co.,* 530 So. 2d 995, 997 (Fla. 1st DCA 1988); *Dinowitz v. Weinrub*, 493 So. 2d 29, 31 (Fla. 4th DCA 1986).

Given that the dash cam video was repeatedly shown to the jury, even if the accident report privilege does not apply, there was no need for using the accident scene diagram as a demonstrative aid.  Its utility was questionable especially when so little was known about the diagram's accuracy in any respect.  Whatever may have been improper about using it as a demonstrative aid need not be analyzed at length as Jenkins next offered the accident scene diagram into evidence.  Over Appellants' repeated objections of inaccuracy and privilege, it was received in evidence and included in the exhibits sent back with the jury during deliberations.  Under the circumstances here, given that it was not properly authenticated, not to scale, generally unexplained, and differed in its depiction from what is clearly seen in the dash cam video, the trial court erred in overruling

11

Appellants' objections to admitting it into evidence. *See Louisiana-Pacific Corp. v. Mims*, 453 So. 2d 211, 212 (Fla. 1st DCA 1984); *Ratner v. Arrington*, 111 So. 2d 82, 85–87 (Fla. 3d DCA 1959) (explaining the important distinction between demonstrative aides and admitted evidentiary exhibits).

Jenkins argues that any errors Appellants complain of were harmless. However, he does not attempt to shoulder the burden placed upon the beneficiary of improperly received evidence or improper argument to "prove that there is no reasonable possibility that the error complained of contributed to the verdict." *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1265 (Fla. 2014). We find that the errors described above, individually and cumulatively, deprived Appellants of a fair trial. Accordingly, we reverse for a new trial on all issues.

REVERSED and REMANDED.

MAKAR and HARRIS, JJ., concur.